UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KATHRYN OTICO,

           Plaintiff,

   v.

HAWAIIAN AIRLINES, INC.,

           Defendant.

Case No.  16-cv-02557-VC

**ORDER RE SUMMARY JUDGMENT**

Kathryn Otico was accepted into a training program to become a customer service representative for Hawaiian Airlines.  The program, which took place at Oakland International Airport, lasted ten days.  It consisted almost exclusively of classroom work and tours of the facilities.  Employees of the company taught Otico about FAA regulations, the computer system, and the way the company operated.  Except for a fleeting moment, Otico provided no service to any Hawaiian Airlines customer during the ten-day instruction period.  Before interviewing for the position, Otico was told that she would not be paid for the training.

At the end of the training period, Otico was required to take a test.  It is reasonable to infer from the evidence (viewed in the light most favorable to Otico) that the parties expected that if she passed the test and met a few other prerequisites (such as passing a background check and obtaining an airport security badge) she would very likely begin working for Hawaiian promptly, but she was not guaranteed the job.  Otico passed the test, was hired, and worked a short period for Hawaiian before quitting.

Otico has filed a lawsuit in which she alleges that she was an "employee" under federal and California law during the training period, and that Hawaiian should therefore have paid her

for that time.  Neither side argues that there is any difference between the federal and California legal standards for determining whether Otico qualifies as an "employee" for purposes of the FLSA and California Labor Code, and the law of both jurisdictions indeed appears to be the same. *See Benjamin v. B&H Educ., Inc.*, No. 13-cv-04993-VC, 2015 WL 6164891, at *1-2 (N.D. Cal. Oct. 16, 2015).  Otico's lawsuit is a proposed class action, but the parties opted to file cross-motions for summary judgment on her individual claims before litigating the class certification question.

The United States Department of Labor has identified six criteria for deciding whether a worker crosses the line from "trainee" to "employee" within the meaning of the federal Fair Labor Standards Act.  The criteria are:

1. The training, even though it includes actual operation of the facilities of the employer, is similar to that which would be given in a vocational school.

2. The training is for the benefit of the trainees.

3. The trainees do not displace regular employees, but work under close observation.

4. The employer that provides the training derives no immediate advantage from the activities of the trainees; and on occasion his operations may actually be impeded.

5. The trainees are not necessarily entitled to a job at the conclusion of the training period.

6. The employer and the trainees understand that the trainees are not entitled to wages for the time spent in training.

*See* U.S. Dep't of Labor Opinion Letter, 2001 WL 1558755, at *1-3 (Jan. 30, 2001) (citing *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947)).

Otico argues (and the Department of Labor has argued in other cases) that courts should apply these criteria rigidly, and must conclude that a trainee is an "employee" unless the employer can satisfy all six of them.  Just about every court to consider this argument has

rejected it.  The courts have instead concluded that "the six criteria are relevant but not conclusive" on whether trainees are employees, and that courts should consider all the facts in context.  *Reich v. Parker Fire Prot. Dist.*, 992 F.2d 1023, 1027 (10th Cir. 1993); *see Woodruff v. Cnty. of San Diego In-Home Supportive Servs. Public Auth.*, No. D062180, 2014 WL 2861431, at *23 (Cal. Ct. App. June 24, 2014) (unpublished) ("These criteria need not be strictly or rigidly applied. . . . [A] totality of the circumstances controls whether a trainee should be deemed an employee for purposes of the application of California minimum wage laws.").  The overarching inquiry is whether the trainee or the employer is the "primary beneficiary" of the work being performed.  *See Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1203, 1209-10 (11th Cir. 2015); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 536 (2d Cir. 2015); *McLaughlin v. Ensley*, 877 F.2d 1207, 1209 & n.2 (4th Cir. 1989); *see also Benjamin*, 2015 WL 6164891, at *1-2.

To put it another way, the key question (to which the six criteria are relevant but not exhaustive) is whether the employer is taking financial advantage of the trainee by using her to perform work that an employee would otherwise be performing.  If so, the trainee should be paid for the work as an employee.  *See Reich*, 992 F.2d at 1028 ("[T]he courts have found trainees to be employees when the employers' training consists merely of supervising trainees as they carry out employees' duties."); Cal. Dep't Indus. Relations, Div. Labor Standards Enf't, Opinion Letter on Educational Internship Program, at 12 (Apr. 7, 2010) ("[W]here trainee/interns are placed in a business and the activities performed are directly performing the main work of the business, such [trainees] are stepping in the place of a worker and the employer may likely gain an immediate (economic) advantage as a result.").

This case is a good illustration of why courts have rejected the Department of Labor's approach of mechanistically applying the six criteria.  The criteria seem designed for true "on-the-job" training – that is, a situation where a trainee is actually performing the work of an employee as part of her training.  For example, a newly-hired server in a restaurant might do on-the-job training by actually waiting on customers, cleaning up at the end of the shift, and the like.

In this type of situation, the concern is that the employer is exploiting trainees by using them to save money on payroll, and this is where the criteria seem most relevant:  Are the trainees displacing regular employees, or are they being closely supervised by regular employees?  Does the employer derive an "immediate advantage" from the work being done by the trainees?  And is the training similar to vocational training "even though it includes actual operation of the facilities of the employer?"  Here, Otico did not engage in the type of "on-the-job" training that these questions are concerned with.  She did not actually perform the work of an employee.  Her training comprised almost exclusively classroom instruction and touring of the facilities, which were *precursors* to performing the work of an employee.  In a context like this, many of the six criteria seem a lot less relevant.

Considering these circumstances, no reasonable juror could conclude Otico was acting as an "employee" when she took her training courses at Hawaiian Airlines.  This was not a situation in which Hawaiian was directly benefitting from Otico's free labor, or potentially scaling back on the work of its existing employees by using Otico to perform customer service duties.  Hawaiian was using its existing employees to teach Otico how to perform the work, primarily in a classroom setting, and without Otico actually doing any customer service work.[1]  To be sure, Hawaiian benefits indirectly from someone's participation in its ten-day training program, because if the person passes the test and meets a few other prerequisites, Hawaiian will likely have a well-trained employee.  But it is not using the participants in its training program as anything close to "employees," and, in that sense, Hawaiian receives no direct benefit from their training.  Instead, the trainees receive the benefit of learning how to do a job they hope to get.  Otico, therefore, was the "primary beneficiary" of the arrangement.  Although one wonders why Hawaiian is unwilling to pay *something* to these people, since they no doubt must sacrifice to

---

[1] Otico testified at her deposition that, during the hour-long portion of training when she was supposed to be observing the customer check-in process, she asked one or two customers for identification, compared the information against the information on Hawaiian's computer, and handed back the identification and boarding passes.  Apart from that fleeting moment, there is no other evidence that Otico interacted with customers.

participate in the program, the law does not require it to do so.

Incidentally, the mechanistic application of the six criteria preferred by Otico would, in this case, lead to the same result. The first factor is whether the training, "even though it includes actual operation of the facilities of the employer," is similar to vocational school training. As discussed, Otico's training did not include actual operation of Hawaiian's facilities, so there's no need to ask whether it was similar to vocational school training (although it likely is).[2] The second factor is whether the training is for the benefit of the trainees. As discussed above, it is (even though the employer indirectly benefits from the training program as well). The third factor is whether the trainee replaces an employee, as opposed to merely working under close supervision of an employee. Otico did not replace an employee during her training (nor did she even "work" under close supervision of an employee; she was merely taught by Hawaiian employees). The fourth factor seeks to ensure that the employer derives no "immediate advantage" from the activities of the trainees, and that in fact the employers operations may actually be impeded. This is satisfied because Otico performed no customer service and the employee principally responsible for conducting the training had to work overtime or obtain coverage to fulfill his regular duties. The fifth factor is that the trainees are not necessarily entitled to a job at the conclusion of the training period; Otico concedes that this is true. The sixth factor is that everyone must understand that the trainee is not entitled to wages for the time spent in training; this too is undisputed.

Accordingly, summary judgment is granted for Hawaiian on Otico's claim that federal and state law required the company to pay her during the ten-day training course.

---

[2] The Court grants Otico's motion for leave to file a sur-reply, which contains Otico's objections to opinions offered by Hawaiian's expert, Leonard Sloper. In considering this factor, the Court does not rely on Mr. Sloper's opinion regarding vocational programs found online; the Court agrees with Otico that these opinions are not admissible. However, there is sufficient foundation to support Mr. Sloper's opinion that Hawaiian's training program teaches the fundamentals of the SABRE system, a computer software program for customer reservations and airport passenger handling that is "widely used" in the airline industry. This evidence suggests that Hawaiian's training involves the type of technical skills instruction that might be offered in a vocational school.

The final question is whether there is anything left of this case.  In her summary judgment briefs, Otico presented a surprise argument (a surprise to Hawaiian and to the Court, anyway) that Hawaiian failed to pay her for ten minutes of time she worked on each of eight separate days after she'd completed the training program.  And she seeks summary judgment on that question, even though she presents virtually no evidence in support of it.  Hawaiian cross-moves for summary judgment.

It's not clear that this allegation about the 80 minutes of uncompensated time is fairly included in the operative complaint.  If it is fairly included, it's not clear whether Otico is asserting it on behalf of herself or a class.  If she's asserting it on behalf of a class, it's not clear how she could do that.  Accordingly, Otico and Hawaiian's cross-motions for summary judgment on this alleged claim are denied for now.  An in-person case management conference will take place on January 24, 2016 at 1:30 p.m. to discuss if Otico may proceed on this alleged claim at all, and if so, how.  The parties should file a joint case management statement 7 days before the conference.

**IT IS SO ORDERED.**

Dated:  January 9, 2017

_____
VINCE CHHABRIA
United States District Judge

6